# LEVENTHAL & KLEIN, LLP

ATTORNEYS AT LAW
45 MAIN STREET, SUITE 230
BROOKLYN, NY 11201

T (718) 722-4100
F (718) 522-3225

JASON LEVENTHAL
BRETT H. KLEIN

ADMITTED IN NY & NJ

60 BAY STREET, SUITE 701
STATEN ISLAND, NY 10301

November 24, 2009

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Ernst Solon v. City of New York, et al.*, 09 CV 4388 (BMC)

Dear Judge Cogan:

    I represent the plaintiff in the above-referenced civil rights action. Pursuant to the Court's Order dated October 15, 2009, and in anticipation of the initial conference scheduled for November 30, 2009 at 11:00 a.m., the parties respectfully submit this joint letter to apprise the Court of the parties' brief descriptions of the case, including the factual, jurisdictional, and legal basis for the claims and defenses.

**Brief Description of the Case by Plaintiff**

    Plaintiff Ernst Solon is a resident of Staten Island, New York. On July 18, 2008 at approximately 6:40 p.m., Solon, who is African American and was twenty four, was the passenger in a car that was operated by his friend, Karim, who was also African American. Plaintiff and Karim had just had a meal at a nearby restaurant, and were driving near Jersey Street and Benziger Ave., in Staten Island, when they were stopped by the defendant plainclothes NYPD officers. An officer approached Karim, proceeded to question him and to order Karim out of the car, notwithstanding that Karim had done nothing wrong. While this was taking place, plaintiff called 911 to report that the defendants had illegally stopped the vehicle and ordered Karim out of the vehicle. Notwithstanding that plaintiff was exercising his right to report alleged misconduct, and was not interfering in any way with the interrogation of Karim, a defendant police officer opened the front passenger door where plaintiff was sitting, and two of the defendants grabbed plaintiff and forcibly pulled him out of the vehicle. One of the defendants restrained plaintiff around his head, while another defendant grabbed and damaged plaintiff's cell phone. Some of the defendants grabbed and slammed plaintiff into Karim's car, and repeatedly struck plaintiff on his head and body. Plaintiff was then slammed to the sidewalk. While he was on the ground being restrained, some of the defendants repeatedly struck plaintiff on his head and body, and repeatedly struck plaintiff's head into the sidewalk without justification. Much of the aforementioned events were captured on a surveillance video, which has already been provided to defense

counsel, along with copies of court records and medical records relating to the allegations set forth in the complaint, along with all relevant authorizations.

Plaintiff was placed in a police car, at which time he felt dizzy and light headed, and he was bleeding. When plaintiff asked for medical assistance, he was struck on his head.

Instead of taking plaintiff for emergency medical treatment, plaintiff was taken to the NYPD 120th precinct. At the precinct, plaintiff fell to the ground while exiting the police car. While he was on the ground, one of the defendant officers stepped down on plaintiff's handcuffs, and simultaneously lifted plaintiff up, causing plaintiff to suffer severe pain to his arms and shoulders. The defendant officer thereafter struck plaintiff's head against a concrete ledge.

Inside the 120th precinct, the same officer punched plaintiff, who was handcuffed, in the face, causing plaintiff to fall to the ground. The officer jumped on plaintiff, put plaintiff in a headlock, and repeatedly struck plaintiff's head into the floor.

Notwithstanding that proper NYPD procedure required the defendants to obtain medical treatment for plaintiff, he was placed in a jail cell. After an unreasonable delay, plaintiff was taken to Richmond University Medical Center by ambulance. The ambulance records confirm that plaintiff was bleeding from his nose and lips, and had a laceration to the posterior part of his head.

At Richmond University Medical Center, plaintiff reported being injured during his arrest and having his head "struck against the concrete." He had lacerations near his right ear and eyebrow, and a 1 cm abrasion on the top of his head. He was noted to have a right temporal hematoma. Plaintiff's facial lacerations were closed with derma bond, and the scalp laceration was stapled.

Despite the absence of any probable cause to do so, the defendants proceeded to process plaintiff's arrest for the purported charges of felony assault, resisting arrest, and harassment. On July 19, 2009, during the arrest process, plaintiff was taken back to Richmond University Medical Center by ambulance due to severe pain and headaches in the area where he was stapled.

On July 20, 2008, plaintiff was arraigned on the felony charges sworn to by defendant Carrero. As a result, bail was set at $10,000, and plaintiff was remanded to the custody of the New York City Department of Correction, where he was detained until on or about July 24, 2008.

Shortly after his release, plaintiff was evaluated again at Richmond University Medical Center, where he was noted to be crying hysterically due to head pain.

After approximately eight court appearances, the criminal charges were dismissed and sealed pursuant to the motion of the Office of the Staten Island District Attorney.

**Brief Description of the Case by Defendants**

As an initial matter, defendant City of New York ("City") only received the executed § 160.50 release on November 16, 2009. As Your Honor is aware, this release is necessary for this office to access documents sealed pursuant to N.Y.C.P.L. §160.50. Thus, defendant City has had very limited access to its own police records and the prosecution records pertaining to the incident underlying this action. Moreover, upon information and belief, the police officer who arrested plaintiff and who is a named defendant in this action passed away a few months ago.[1] The other named defendant did not immediately recall the incident but is in the process of reviewing his paperwork to attempt to refresh his recollection.

Notwithstanding, based on the information received to date, it appears that at approximately 6:45 p.m., on July 18, 2008, plaintiff was a passenger in a vehicle that was pulled over by the New York City Police Department Brooklyn South Gangs Squad. After the vehicle was pulled over, a struggle ensued between police officers and plaintiff. Plaintiff resisted arrest but was ultimately handcuffed and arrested. Plaintiff was charged with, *inter alia*, assault and resisting arrest.

Richmond University Medical Center hospital records produced by plaintiff indicate that plaintiff was transported to the hospital by 7:38 p.m., on the evening of his arrest while in the custody of the NYPD. At the hospital, plaintiff complained of lacerations and abrasions and was diagnosed with a "1cm scalp laceration." The medical records state that there was "no evidence of serious head injury, neurological injury, chest or abdominal injury." Plaintiff received one suture for the laceration and was discharged. Plaintiff returned the next day complaining of headache from the suture and was diagnosed with a post traumatic headache and discharged. Plaintiff returned to the hospital approximately a week later complaining of headache and was given a CT scan which showed no acute intracranial abnormality.

The case proceeded toward trial until the charges against plaintiff were dismissed on August 24, 2009. Plaintiff now sues the City of New York, the deceased officer who arrested plaintiff and another individual police officer who was present during the alleged incident involving plaintiff. Plaintiff alleges claims of false arrest, malicious prosecution, and excessive force. Plaintiff further alleges conclusory allegations of a municipal policy, custom, or practice in support of his purported claim for municipal liability pursuant to *Monell*.

---

[1] Once the officer's death has been confirmed, defendants will serve a suggestion of death pursuant to Fed. R. Civ. P. 25.

3

**Defendants' Jurisdictional and Legal Justification**

In order to prove a false arrest claim, a plaintiff must show that: (1) the officer intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement and did not consent to it; and (3) the confinement was not otherwise privileged. Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996). To prove a malicious prosecution claim, a plaintiff must show: (1) the commencement of a criminal proceeding by the defendant against him; (2) that the prosecution caused a sufficient post-arraignment liberty restraint on plaintiff; (3) the termination of the criminal proceeding in his favor; (4) the absence of probable cause for the charges; and (5) malice on the part of the defendant. Green v. Montgomery, 219 F.3d 52, 59-60 (2d Cir. 2000). Based on the above, defendant City submits that there was probable cause to arrest and prosecute plaintiff based upon his criminal conduct at the time of the initial stop. Indeed, a showing of probable cause defeats claims of false arrest and malicious prosecution, regardless of an ultimate finding of guilt or innocence. Dukes v. City of New York, 879 F. Supp. 335, 340 (S.D.N.Y. 1995).

In order to establish an excessive force claim, a plaintiff must show that the force used by the defendant officer was, in light of the facts and circumstances confronting him, "objectively unreasonable" under Fourth Amendment standards. See Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990) (quoting Graham v. Connor, 490 U.S. 386, 395-96 (1989). In this matter, defendant City denies that any force used in effectuating the arrest was excessive.

Finally, in order to establish municipal liability, a plaintiff must demonstrate that the constitutional harm suffered was the result of a municipal policy, practice or custom. Monell v. Department of Social Services, 436 U.S. at 690-91. Defendant City respectfully submits that plaintiff will be unable to prove constitutional harm and that, even if he were able to show such harm, it did not result from any municipal policy, practice or custom of the City.

**Defendants' Anticipated Defenses**

1) The complaint fails to state a claim upon which relief can be granted.

2) Any injury alleged to have been sustained resulted from plaintiff's own culpable or negligent conduct and/or the intervening conduct of third parties, and was not the proximate result of any act of defendant City of New York.

3) There was probable cause for plaintiff's arrest and prosecution, which is a complete defense to claims of false arrest and malicious prosecution. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2nd Cir. 1998).

4) The individual officers are entitled to Qualified Immunity. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 511, 526 (1985).

4

5) At all times relevant to the acts alleged in the complaint, defendant City, its agents and officials, acted reasonably, properly, lawfully and in good faith in the exercise of their discretion. Consequently, defendant City of New York is entitled to governmental immunity.

6) Defendant City reserves its right to assert additional affirmative defenses in its answer currently due on January 8, 2010.

**Contemplated Motions**

Plaintiff does not contemplate any dispositive motion at this time.

Defendant anticipates moving for summary judgment at the close of discovery.

**Damages**

Plaintiff seeks compensatory and punitive damages in an amount to be determined by a jury, along with reasonable attorneys' fees and costs.

Defendant City is awaiting additional NYPD paperwork, the Richmond County District Attorney's Office file and Criminal Court file before it can properly assess the case for settlement purposes.

Thank you for your consideration.

Respectfully submitted,

Brett H. Klein

cc:  A.C.C. Gabriel Harvis